October 16, 2018

```
             IN THE UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF GEORGIA
                       ALBANY DIVISION
                   CASE NUMBER 1:15-CV-56
```
_____

```
TAMANCHIA MOORE,                 )
                                 )
            PLAINTIFF            )
                                 )
                                 )      OCTOBER 16, 2018
v.                               )
                                 )      ALBANY, GEORGIA
                                 )
INTUITIVE SURGICAL, INC.,        )
                                 )
            DEFENDANT            )
```
_____

```
                     STATUS CONFERENCE
            BEFORE THE HONORABLE LESLIE J. ABRAMS
               UNITED STATES DISTRICT COURT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFF            JEFFREY HABERMAN, ESQ.
                             SCHLESINGER LAW OFFICES
                             1212 SOUTHEAST THIRD AVENUE
                             FT. LAUDERDALE, FLORIDA  33316
                             and
                             ALFRED CORRIERE, ESQ.
                             VANSANT & CORRIERE
                             128 S. WASHINGTON ST., 2ND FLOOR
                             ALBANY, GEORGIA  31701

FOR THE DEFENDANT            Z. ILEANA MARTINEZ, ESQ.
                             THOMPSON HINE
                             3560 LENOX ROAD, SUITE 1600
                             ATLANTA, GEORGIA  30326
                             and
                             NANCY WUAMETT, ESQ.
                             GEOFFREY M. WYATT, ESQ.
                             SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                             1440 NEW YORK AVENUE, N.W.
                             WASHINGTON, D.C.  20005

ALSO PRESENT                 TAMANCHIA MOORE


MINDY MARTIN, USCR
229-405-6818

October 16, 2018

1        (Commencing at 4:10 p.m.)

2            THE COURT:  Good afternoon, everyone.  We're here in a
3    status conference in Moore versus Intuitive Surgical,
4    1:15-CV-56.  Would counsel please announce your appearances.

5            MR. HABERMAN:  Good afternoon, your Honor.  Jeffrey
6    Haberman and Al Corriere on behalf of the plaintiff, Ms. Moore,
7    who's also present.

8            THE COURT:  Good afternoon.

9            MR. WYATT:  Good afternoon, your Honor.  Geoffrey Wyatt
10   for Intuitive Surgical.  I'm here with Nancy Wuamett and Ileana
11   Martinez.

12           THE COURT:  Good afternoon.

13       So I set this hearing because at present this case has been
14   pending about three years, and we need to get it moving.  I know
15   there are a number of motions before the Court, so I wanted to
16   kind of walk through where I am, get some feedback from you all,
17   and set a schedule.  So first we'll go through the outstanding
18   motions.

19       Plaintiff has an outstanding motion for summary judgment,
20   which, I believe, is document 51.  Having reviewed the papers,
21   I'm going to deny as moot -- deny the motion as moot as to
22   affirmative defenses 6, 8, and 10 given that the defendant has
23   withdrawn those defenses.

24       I'm also going to deny as moot, the motion as moot insofar
25   as it pertains to events that were extraordinary under the

1  circumstances -- I'm sorry -- as to affirmative defense number 4
2  to the extent that it involves events that were extraordinary
3  under the circumstances, not foreseeable in the normal course of
4  events, or independent or far removed from Intuitive Surgical's
5  conduct or controls.  Again, the defendant has conceded that
6  that's not appropriate and has withdrawn that affirmative
7  defense.
8       However, I am going to consider the motion solely to the
9  extent that Intuitive seeks to rely on the affirmative defense
10 that plaintiff's claim are barred because her alleged injuries
11 were actually or proximately caused in whole or in part by the
12 intervening or superceding conduct of independent third parties
13 and nonparties.
14      So, essentially, to the extent that they asserted that there
15 is an affirmative defense, to that narrow, that's the only thing
16 that the Court will consider with regard to the motion for
17 summary judgment.  I'm going to reserve ruling on that at this
18 point mainly because there's a motion to exclude Dr. Huh's, I
19 think that's how you pronounce it, Huh, Huh's testimony.
20           MR. HABERMAN:  Yes, on Dr. Huh --
21           THE COURT:  Oh, go ahead.
22           MR. HABERMAN:  No.  Plaintiff has a motion to exclude
23 the testimony of Dr. Huh and Dr. Smurda, which are
24 defendant's --
25           THE COURT:  Well, to the extent that that issue is, as

1    I read it, to the extent that that issue, the remaining issue in
2    the motion for summary judgment, Dr. Huh's testimony seems to be
3    pivotal, so at this point, given that I have to rule on the
4    motions in limine, I'm going to reserve ruling on that issue.
5        I am going to note, however, just to give you all an update,
6    because I feel like I should let you know, based on what I've
7    read so far, it appears that that, based on -- assuming that
8    testimony comes in and given the testimony of the other expert,
9    plaintiff's own expert, I do believe that that is a viable
10   affirmative defense.  So I'll just give you a heads-up that
11   that's, you know -- the Court's -- I've gone through everything.
12   So we're not just sitting on it.  But just to give you an idea,
13   that's where we're going.
14       With regard to defendant's motion for summary judgment,
15   which is document 58, again, I'm going to reserve ruling on that
16   until the Daubert motions are determined because, again, it
17   appears that, the motion appears to turn on the admissibility of
18   the expert.  So we'll get, I think, to all of those in due
19   course.
20       There are a number of motions to exclude testimony.
21   Particularly, I'll start with document 54, which is plaintiff's
22   motion to exclude Dr. Rakow's testimony.  I am denying that
23   motion.  As I review it, the plaintiff is seeking to exclude the
24   testimony on two bases; first, that Dr. Rakow's opinion does not
25   fit the facts and is based on speculation and not reliable

October 16, 2018

1  methodology.
2      My reading of that argument either misstates or
3  misunderstands Dr. Rakow's opinion as asserted.  Plaintiff seems
4  to believe that there's a contradiction.  I don't believe
5  that -- I don't read it as a contradiction, not a contradiction
6  that would disqualify him.  As I read it, he opined that the
7  dimensional controls that Intuitive used in 2009 were in line
8  with industry standards.  That is not contradicted by anything
9  that Intuitive later says.
10     It says it did these tests, that those are the controls, and
11 that's how he did it.  He can certainly opine to that.  You can
12 certainly cross-examine as to that.  But it certainly is not
13 either a direct contradiction or a lie or falsehood for him to
14 set forth that opinion and certainly to be disqualified at that
15 point.
16     When we get to the FDA issue, again, he is not opining as to
17 anything that has to do with the FDA.  He is opining -- he's a
18 materials expert.  His limited testimony is to the testing and
19 such in his area of expertise.  As he's not testifying regarding
20 any FDA regulations, and he clearly states that he's not
21 qualified to testify as to the FDA regulations, the limited
22 opinions that he's offered do not impute the FDA regulations.
23 Thus, this objection does not have merit, and I'm going to deny
24 that.
25     Now, with the rest of them, I believe we have got to have a

October 16, 2018

1   hearing on the -- I think there are five outstanding ones.  For
2   Dr. Rakow, I believe, as a matter of law, there was just nothing
3   to go on there.  But with regard to the other five experts and
4   the competing motions to exclude, I think we do need to have a
5   hearing.
6       I am setting aside two days for this.  The hearing will be
7   held on January 17th and 18th, beginning at 9:30 a.m.  And you
8   all do not feel the need to use all this time, but you are
9   limited to five hours each.  And that is inclusive of your
10  opening argument, your closing argument, your direct, and your
11  cross.  So there will be a timer.
12      Just to let you know, the trial will also be done on a timer
13  because I think that that's the most efficient.  I've found it's
14  the most efficient way to do these trials.  So each side,
15  beginning at 9:30 on the 17th, will have five hours to present
16  your case.  And we'll do our best to get that taken care of.
17      And so once we get that, I'll make a ruling on those, on the
18  Daubert motions, and then that should make the rulings on the
19  summary judgment, they're very, I think very succinct after
20  that.  They're very narrow issues.  So once we rule on Daubert,
21  I think the Court, in the next couple of a weeks after that
22  ruling, should be able to get you the motion for summary
23  judgment.
24      There's an outstanding motion for sanctions.  And, again, I
25  know you all have come prepared.  I think most of this was

October 16, 2018

1   briefed out to the point where I don't need argument today.  But
2   if at some point you want to be heard, just let me know.
3       At this point, I'm granting the motion for sanctions.  As I
4   review the law, and I'm very familiar with the process with this
5   particular issue as we had a hearing here, the plaintiff had a
6   duty to preserve the journal.  That duty certainly -- or
7   arguably arose when the case was filed.  It certainly arose when
8   the first RFP was propounded on April 11, 2016.  And that RFP,
9   one of those RFPs sought journals kept by the plaintiff that
10  memorialize, describe, refer to, or in any way relate to any of
11  the facts, allegations, injuries, or damages referred to in the
12  complaint.
13      If plaintiff didn't -- so there was notice there.  And
14  plaintiff certainly should have seen it.  Plaintiff's counsel
15  definitely should have seen and preserved that journal.  Found
16  out if the journal existed.  And to the extent the journal
17  existed, should have -- could have told plaintiff that she
18  should have preserved it.
19      Even if they didn't know then, she didn't know then, in
20  April 2017 there were many, multiple pages of a deposition
21  focusing on this journal.  That should have put the plaintiff on
22  notice that she had to keep that.  Counsel should have also told
23  her that she had to keep it.  But notice was certainly there.
24  And notice is knew or should have known.
25      Yet despite both of those, two to three months after the

1  deposition, she destroyed it.  Threw it away.  That's spoliation
2  of evidence.
3      The Court also finds that there was bad faith involved in
4  the spoliation.  Defendant (verbatim) seeks to avoid a finding
5  of bad faith by arguing that plaintiff did not throw the journal
6  away because of the litigation but for other personal reasons.
7  However, the Eleventh Circuit has made it clear that malice is
8  not required to make a finding of bad faith.  Rather, as the
9  Eleventh Circuit held in <u>Mann v Taser</u>, bad faith may be found
10 where the plaintiff's actions are responsible for the spoliation
11 of evidence and the plaintiff fully appreciated the significance
12 of the evidence to the anticipated litigation.
13     Here, plaintiff's actions were -- she certainly was
14 responsible.  She's admitted that she threw it away.  So the
15 first prong is met.  The second prong, that she gave it away --
16 she threw it away after the RFP was propounded and after she was
17 questioned about it at the deposition, based on that, the Court
18 finds that the plaintiff fully appreciated the significance of
19 the evidence to the litigation.
20     Furthermore, the fact that the plaintiff did not admit that
21 the journal was discarded until after the defendant had made
22 several requests for it, after the defendant had filed a motion
23 to compel, after the Court held an unnecessary hearing, wasting
24 the Court's time and resources, when the defendant (verbatim)
25 knew that that journal had already been thrown away before we

October 16, 2018

1  sat here and had that hearing, that also indicates that she was
2  aware of the significance of the journal.
3      So the question now becomes the import of the evidence.  Per
4  the Eleventh Circuit, it must be more than relevant.  It has to
5  either be critical or crucial.  However, there does not have to
6  be concrete evidence of what the journal is.  I understand what
7  the plaintiff says was in it, but nobody knows that.  And we're
8  not going to punish the defendant because they didn't get to see
9  it because she threw it away.
10      The journal might have contained evidence belying
11  plaintiff's contentions regarding her mental and emotional state
12  following the surgery.  Accordingly, plaintiff is seeking
13  damages based on emotional distress.  Such evidence is certainly
14  critical.
15      Based on those findings, the Court finds that sanctions are
16  warranted.  I agree with plaintiff that dismissal of the claim
17  is not appropriate.  However, the Court is going to give an
18  adverse inference instruction, one, informing the jury of
19  plaintiff's destruction of the journal during the pendency of
20  this case and, two, directing the jury to presume that the
21  journal contained information that was adverse to the plaintiff
22  and favorable to the defendant.  And when we get closer to the
23  trial, we will craft that language.
24      So I'll stop here.  Well, no, let me give you all the
25  sanctions, and then I'll hear from you if you want to be heard

October 16, 2018

1  on the record.
2      Plaintiff is also ordered to pay the reasonable fees and
3  expenses associated with both the motion to compel and the
4  motion for sanctions related to this matter.  I'm going to allow
5  limited discovery as described in footnote 6 of the defendant's
6  motion for sanctions at document 78.  That discovery must be
7  completed by November 16th.
8      And the Court's instructions regarding the discovery
9  including but not limited to the self-authenticating rule, the
10 21, 21, 21 day rule, and the rules regarding the motions to
11 compel and extension apply.  So just go back and make sure you
12 reference the Court's pretrial order to how we deal with motions
13 to compel.
14     At this point, I'm going to withhold ruling on whether
15 plaintiff's counsel should be sanctioned.  There are specific
16 findings that have to be made with that regard, and I believe a
17 hearing needs to be heard, so I'm going to defer ruling on that
18 at this time.
19     All right.  If anybody wants to be heard on this for the
20 record, you may.
21         MR. HABERMAN:  I'd like to be heard, your Honor.  Thank
22 you for giving me the opportunity to be heard.
23         THE COURT:  If you could pull that mike towards you.
24         MR. HABERMAN:  Sure.  Would it be better if I come up?
25         THE COURT:  Either one you're more comfortable with.

October 16, 2018

1     MR. HABERMAN:  I'd like to take the opportunity to
2  inform the Court that I understand my role here is to be an
3  officer of the court, not just an advocate for my client but
4  also an officer of the court.  And at no point in time did I act
5  according to the way the defendant has charged and the way the
6  Court has seemingly found, which was that there might be some
7  bad faith or ulterior motive in not producing Ms. Moore's
8  journal.
9     THE COURT:  Well, I'll stop you now.  I haven't made
10 that finding.  That's the whole point; I'm deferring on that.
11 I'm not getting into the, not the issue of sanctions with regard
12 to counsel's conduct.  And I'm not inferring that you acted
13 nefariously.
14    I'll just tell you where I am right now.  It may have been
15 an issue where -- the worst that I see happening is that you did
16 not inform your client that she had to preserve the journal.
17 And I want you not to speak on that at this point because if you
18 did inform her and she ignored you, then that makes the
19 situation more egregious, and you certainly don't want to
20 prejudice your client at this point, which is part of the reason
21 I am withholding making any decision about the imposition of
22 sanctions to counsel.
23    MR. HABERMAN:  Okay.  Fair enough, your Honor.
24    The time line that the defendant has set up also seems to
25 suggest that there was some foul play going on but -- and I

October 16, 2018

1   understand that the Court understands the plaintiff's argument,
2   which is that the contents of this journal never touched on
3   issues that go to this case.  I know that the Court disagrees.
4   But if you'll give me the opportunity to just state again for
5   the record, our reading of Ms. Moore's deposition transcript
6   shows that her journal entries were limited to her romantic
7   dealings with her then-boyfriend --
8           THE COURT:  Well, I'm going short-circuit this one
9   because it's been written.
10          MR. HABERMAN:  Sure.
11          THE COURT:  And it's getting late in the day.  But,
12  two, at the very least, she notes that she broke up with
13  Mr. Lastor in part because of the emotional fallout from this.
14  That falls within the context.  Whether it's helpful to the
15  defendant or not, that falls -- it had some bearing on it.  You
16  know that relevance is very, very wide.  And based on her
17  statement alone, that journal was responsive, number one.
18          Number two, according to the Eleventh Circuit, I can't take
19  her word for what was in that journal.  If you had produced it,
20  if you'd even produced it in camera, then I would have had an
21  opportunity to say it's relevant or not relevant.
22          But since it was destroyed, I can't say what it was.
23  Defendant can't say what it was.  Defendant doesn't have an
24  opportunity to do anything.  And we're not -- the court says I'm
25  not obliged to just take your word for it.  Because in that

1  case, everybody would go around destroying evidence and then
2  saying but this was what was in it.
3      So according to the law, I get what she says was in it and
4  what she says it doesn't apply to, but you don't get to make
5  that choice.  And you certainly don't get to destroy the
6  evidence that goes either way.
7          MR. HABERMAN:  I understand that, your Honor.  I just
8  think that when the defendant had moved to compel, we had a good
9  faith legal basis for making an objection at that time.  And
10 that was argued before you, your Honor, back in April, I think.
11 And I think you had even agreed with me when we had read through
12 the transcript that if I what was saying -- if at a certain
13 point the testimony stopped, you agreed with me, but then
14 another question was asked, and you made the ruling that you
15 made.  I don't think -- and I just, maybe I'm doing myself more
16 harm than good.  I just didn't think --
17         THE COURT:  I'm not saying you shouldn't have argued
18 the motion to compel.  My thing is, even if you didn't know when
19 you came here and argued that motion, your client knew she had
20 thrown it away.  She threw it away in the summer of 2017.  That
21 hearing was in 2018.  We had a whole hearing about a document
22 that no longer existed.  That's the point.
23     It doesn't matter what was in it.  We had an entire
24 hearing -- my time, my clerk's time, everybody up here's time --
25 when either you and your client or just your client knew what we

1  were arguing about had been destroyed.
2          MR. HABERMAN:  Fair enough, your Honor.  And with that,
3  I'll sit down.  Thanks.
4          MS. MARTINEZ:  May I just speak very briefly?
5      You know, we do not take any pleasure, neither my client nor
6  myself or any of these attorneys here take any pleasure in
7  bringing motions for sanctions.  We do not do it lightly.  We
8  only do it under circumstances where it is warranted.  And we
9  believe it is here.
10     I'm not going to go over the authorities that we've cited
11 for the Court's ability to sanction plaintiff's counsel.  What I
12 would like to point out to the Court is they maintain that at
13 the time that we had that hearing on the motion to compel,
14 Mr. Haberman knew nothing that his client had disposed of the
15 journal.  Yet at the end, after the Court says produce the
16 journal in two days, all of a sudden --
17         THE COURT:  I'm stopping you only now because we are
18 not going into sanctions on the attorney at this point.
19         MS. MARTINEZ:  Understood.
20         THE COURT:  If you're making an argument that the
21 sanctions should be more severe than the adverse inference
22 instruction, then I'll hear you on that.  For the purposes of --
23 I need to be as fair as possible.  I'm not having a full-on
24 hearing and I certainly do not -- I'm not going into this in any
25 way to prejudice the plaintiff any further.

October 16, 2018

1   So to the extent, if you want to make an argument that it
2   should be dismissal as opposed to the adverse inference
3   instruction, which you propose in your motion, then I'll hear
4   you on that, but I don't want to get into the issue of what was
5   known and what was represented to the Court at the time.
6           MS. MARTINEZ:  Understood, your Honor.  And I just
7   wanted to correct the record.  Since Mr. Haberman had an
8   opportunity to correct the record, I just wanted to also just --
9           THE COURT:  And the record is not completely closed.
10  We're going to open it up later.  I'm not ruling.  I am just
11  holding off until a later point.
12          MS. MARTINEZ:  Understood.  And while I will not argue
13  it now, we do want the Court to consider all of the evidence in
14  deciding whether a more severe sanction other than the adverse
15  inference is appropriate.
16          THE COURT:  Well, this is the time.  Now, are you
17  talking a more severe sanction as in dismissal?
18          MS. MARTINEZ:  Yes.
19          THE COURT:  This would be the time to argue it because
20  I'm not "my ruling has been made and we're going to go with
21  this."
22          MS. MARTINEZ:  Okay.  Well, I would like, then, to
23  continue with that statement, then, that even though now they
24  maintain, Mr. Haberman and plaintiff maintains that Mr. Haberman
25  knew nothing about the destruction of the journal, after the

1  Court ordered it produced, he says, well, I don't know if it
2  exists anymore.  Why would Mr. Haberman even say that rather
3  than saying, you know, I'll go back to my client and we'll, you
4  know, we'll produce it.  So, to me, that just belies the
5  allegation that he did not know that that journal was destroyed.
6         THE COURT:  But even if he did know, say counsel and
7  plaintiff knew that the journal had been destroyed, we certainly
8  aren't going to punish plaintiff because counsel did something
9  that was outside of the bounds.  So I'm not sure how that
10 argument would lead me to move the sanction from the adverse
11 inference to the dismissal.
12        MS. MARTINEZ:  Understood, understood.  And one other
13 thing, just in consideration of the higher sanction, is that yet
14 another thing that happened here is, once plaintiff's counsel
15 found out in the deposition that plaintiff still had this
16 journal, again, as your Honor has said, he didn't ask her to
17 keep it.  Also did not supplement the discovery request, the
18 responses to the discovery request saying, oh, by the way, our
19 previous answers were wrong; this is now what the situation is.
20   So thank you very much for allowing me to speak.
21        THE COURT:  Hearing that additional argument, I still
22 believe that the appropriate sanction is the adverse
23 instruction.  This is not a situation where -- well, in part
24 because there may be other evidence outside of this going into
25 her emotional state.  Certainly, just the facts of this case

1  would indicate that there has been, certainly, emotional
2  distress, mental and emotional distress just by the nature of
3  the injury.
4      It's one thing to say you can't present this evidence, and
5  we're going to tell the jury to draw an adverse inference from
6  it.  It's another to say, you lose your entire claim even though
7  there is arguably sufficient evidence, assuming that a jury were
8  to find that Intuitive was liable, to say that she did, in fact,
9  suffer these damages.
10     I mean, this idea that -- part of the reason is I have to
11 look at the severity and the criticality.  And if this did, in
12 fact, happen -- well, regardless of the cause, certainly there
13 was emotional and mental, just, stress.  Now, whether there
14 should be damages from that, that's something for a jury to
15 decide.  But I'm just not at a point where I'm not going to
16 preclude her from making that argument and going forward on that
17 issue.  Okay.
18     Anything further?
19         MR. WYATT:  Your Honor, one question, if I may,
20 regarding the proposed Daubert hearing.  Does the Court have any
21 format in mind for the presentations?  Does the Court wish to
22 ask any questions of its own of the witnesses, or is this up for
23 counsel to sort of structure --
24         THE COURT:  Oh, no.  It's definitely up to counsel to
25 structure.  However, to the extent that something pops into my

October 16, 2018

1  head, because there won't be a jury, if there's something that
2  I'm confused on or that I need to make a decision, I will
3  interject, but it's up to you to present your case.
4       MR. WYATT:  Thank you.
5       THE COURT:  Okay.  All right.  Anything further?
6    (No response)
7       THE COURT:  Trial in this matter is going to be held
8  the week of February 11th, 2019.  The pretrial conference will
9  be on February 1st, 2019, starting at 10 a.m.  And we will get a
10 pretrial order out to you sooner rather than later.  We're
11 getting back up to speed after the storm, so I'm not going to
12 say Ms. Rushing will have it out this week.  But we'll get it
13 out to you soon.  But go ahead and mark that trial.  I'm
14 blocking off my calendar for that week.
15    Do either of you anticipate that this trial is going to last
16 more than a week?
17    (Pause)
18       THE COURT:  Well, let me put it like this.  You're
19 going to do your pretrial order.  I'm looking at this case.  I'm
20 very familiar with it.  I don't see how it would last more than
21 a week.  You're going to be time-limited.  So if you think
22 you're going to need more than a week, you should probably be
23 very detailed about that in the pretrial order.  Because right
24 now I am limiting the amount of time for evidence to come in.
25       MR. WYATT:  Understood.  Thank you.

October 16, 2018

1       THE COURT: All right. Is there anything else that we
2  needed to address?
3       MR. HABERMAN: No, your Honor.
4       MR. WYATT: No, your Honor.
5       THE COURT: All right. Then I will see you all in
6  January. Take care.
7       MR. HABERMAN: Thank you.
8   (Proceedings conclude at 4:34 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

October 16, 2018

CERTIFICATE

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF THE PROCEEDINGS.

/S/ Mindy Martin                           October 18, 2018
MINDY MARTIN, RMR, FCRR
UNITED STATES COURT REPORTER
Albany, Georgia  31701
Phone:  229-405-6818

MINDY MARTIN, USCR
229-405-6818