IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| TAMANCHIA MOORE, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : Case No.: 1:15-CV-56 (WLS) |
| INTUITIVE SURGICAL, INC., | : |
| | : |
| Defendant. | : |
| | : |

**ORDER**

This case is before the Court following remand from the Eleventh Circuit Court of Appeals.

**I.     Procedural History**

Plaintiff brought this products liability action on March 16, 2015 "to redress severe personal, financial, and emotional injuries she sustained when her ureter was burned in a da Vinci surgical robot [hysterectomy] procedure." (Doc. 1 ¶ 2.)[1] This case was then assigned to U.S. District Court Judge Leslie Abrams Gardner. Plaintiff alleges that Defendant Intuitive Surgical, Inc. ("Intuitive") makes the da Vinci robot, which is a remote-controlled surgical device, and that Intuitive also manufactures "EndoWrist" instruments for the da Vinci robot which use electrical energy to cut and cauterize body tissue. *Id.* at 2 ¶¶ 9-10.

On December 14, 2015, the initial Scheduling and Discovery order was entered setting the discovery deadline as December 30, 2016. (Doc. 15.) But after motions for extension of time were granted, discovery eventually closed on February 28, 2018. (Doc. 39.) Thus, the

---

1 Plaintiff amended her complaint pursuant to the Eleventh Circuit's order while on appeal to reflect in paragraph three that Plaintiff "is a citizen of Georgia" rather than that Plaintiff "resides in Georgia." (Doc. 155-2 ¶ 3; *cf.* Doc. 1 ¶ 3.) Otherwise, the Complaint has not changed.

1

Parties have had more than two years of discovery. On April 10, 2018, Plaintiff filed a motion for partial summary judgment and three motions to exclude Defendant's expert witnesses, and Defendant filed a motion for summary judgment and three motions to exclude Plaintiff's expert witnesses. (Docs. 51, 52, 53, 54, 55, 56, 57, 58.)

After conducting a *Daubert*[2] hearing, Judge Gardner granted-in-part two of Defendant's *Daubert* motions, finding that neither Dr. Hall nor Dr. Steiner could opine on causation, and granted Defendant's motion for summary judgment. (Doc. 131.) After Plaintiff appealed (Doc. 133), Judge Gardner learned that her husband was a stockholder in Intuitive and informed the Parties of the same in a telephone conference. (Doc. 157.) The undersigned was then assigned to this case, and Judge Gardner was unassigned on July 18, 2019. *See* docket. While the case was on appeal, this Court denied Plaintiff's "Motion to Issue an Indicative Ruling Whether to Vacate the Judgment." (Doc. 168.)

Thereafter, on April 22, 2021, the Eleventh Circuit Court of Appeals issued a published opinion reversing Judge Gardner's prior ruling in this case excluding Plaintiff's expert Dr. Hall and vacating the entry of summary judgment in favor of Defendant. (Doc. 169.)[3] The Circuit Court concluded that "Dr. Hall is qualified to testify as to the cause of Moore's injury," that the "injury was sustained during a hysterectomy procedure," and "that the district court abused its discretion in excluding the testimony of Dr. Hall based on his qualifications." (Doc. 169 at 35, 37.) The Circuit Court found that the deficiencies found by Judge Gardner went to the reliability of Dr. Hall's testimony, not to his qualifications, and the

---

2 *Daubert v. Merrell Dow. Pharm., Inc.*, 509 U.S. 579 (1993).
3 A mandate reflecting the same followed on May 21, 2021. (Doc. 170.) The opinion does not mention Plaintiff's rebuttal expert whose causation opinion was also excluded by the district court, Dr. Paul Steiner (*see* Doc. 131 at 6-8).

Circuit Court declined to address whether Dr. Hall's testimony was due to be excluded as unreliable because the district court had not addressed that issue in the first instance. *Id.* at 23-29, 37.[4] The Circuit Court "remand[ed] for further proceedings consistent with [its] opinion" but did not specifically instruct what should occur on remand. *Id.* at 37-38.

Following remand, this Court issued an order stating that discovery had closed and that it "must now resolve *Daubert* and dispositive motions and ultimately determine whether this case should be set for trial." (Doc. 171 at 2.) The Court then ordered that the Parties confer and be prepared to discuss how the case should proceed at a forthcoming status conference. *Id.* The Court specifically ordered that the Parties be prepared to discuss: "[w]hether additional discovery is appropriate; [w]hether dispositive and *Daubert* motions should be refiled by the Parties or whether the previously-filed motions should be reopened for *de novo* review; and [a] timeline for the filing of motions and a tentative trial date." (Doc. 172.) A status conference on these issues occurred on July 20, 2021, during which the Court heard from counsel for both Parties. Although both counsel agreed that trial should be set for July 2022, they disagreed starkly about how the case should proceed, and the Court ordered that they file written briefs in support of their positions within seven days. (*See* Doc. 174.) The Parties did so.[5]

Plaintiff asks for reopening discovery "limited to expert matters, changes in Plaintiff's circumstances, and updated discovery with respect to adverse events or other new but targeted

---

[4] The Circuit Court directed that this case be reassigned "to a different judge" *id.* at 37, 38, and the Parties have since agreed that the reassignment had already occurred and that the case should remain with the undersigned judge (Doc. 171 at 2).

5 The Court ordered that the briefs be limited to seven pages, and Defendant's brief totals ten pages, which includes a cover page, signature page, and a certificate of service page. (Doc. 174.) The Court will not strike pages from the brief this time because the content fits within seven pages and Defendant may have misunderstood the order, but Defendant should endeavor to better comply with the Court's orders in the future.

3

discovery that would bear on Plaintiff's design defect claim." (Doc. 177 at 1.) The nature of the "limited" additional discovery is vaguely described in the brief, but the Court has discerned from the transcript of the status conference that Plaintiff wants discovery into her alleged worsening health condition and development of kidney disease, and Plaintiff also wants the expert reports to be supplemented to account for these changes in her health. (Doc. 175 at 6.) Plaintiff's counsel has also become aware of discovery in other cases regarding the design defects of the surgical devices at issue in this case and wants updated discovery regarding the design defects of the devices and of injuries suffered by other people that are similar to Plaintiff's injuries. (*Id.* at 5, 9.) Plaintiff also wants to add an additional OB/GYN expert or substitute Dr. Hall for a different expert, arguing that Plaintiff will be prejudiced because Dr. Hall has moved to a new location where, although he practices medicine, he no longer teaches medical students and residents. *Id.* at 6-8; Doc. 177 at 4. Finally, Plaintiff argues that the Court cannot simply begin analyzing the previously filed motions because Federal Rule of Civil Procedure 63 requires the Court to have another *Daubert* hearing, and that the Parties should be allowed to refile *Daubert* and dispositive motions thereafter. (Doc. 169 at 9-10; Doc. 177 at 6.) Plaintiff asks to conclude additional discovery by December 31, 2021, to submit supplemental expert disclosures by January 31, 2022, and to file *Daubert* motions by March 1, 2022. (Doc. 177.)

On the other hand, Defendant argues that fairness and efficiency warrant the Court's prompt *de novo* resolution of Defendant's *Daubert* motion to exclude Dr. Hall which, if granted, could dispose of all of Plaintiff's claims. (Doc. 176 at 2-5.) At the status conference, defense counsel argued that the excludability of Dr. Hall's opinion as unreliable was left open by the Court of Appeals and that he believed Plaintiff's attempt to substitute Dr. Hall was a

4

"desperate move to avoid consideration by this Court of that very issue because that potentially is a dispositive issue." (Doc. 175 at 16-17.) Defendant further argues in its briefing that Rule 63 does not apply and does not require a new *Daubert* hearing, and that if the Court allows Dr. Hall to be substituted, it would be "unfairly prejudicial" because it would allow Plaintiff to correct for the deficiencies Defendant has raised in its *Daubert* motion and "essentially, start the case over" to Defendant's disadvantage. (Doc. 176 at 3-4, 7-8.) Defendant asks that the Court "(1) decide the pending *Daubert* motions, including the motion to exclude Dr. Hall, at the outset, before considering any other pre-trial work; (2) deny plaintiff's request to substitute Dr. Hall; and (3) reopen discovery only as to the discrete issue of plaintiff's newly-alleged kidney injury." *Id.* at 8.

## II. Discussion

### A. Reopening of Discovery and Supplementation of Expert Reports

"When a party fails to complete discovery in time, it may move to reopen discovery and the court may, 'for good cause,' grant the motion if the party shows that it failed 'because of excusable neglect.'" *EarthCam, Inc. v. OxBlue Corp.*, 703 F. App'x 803, 813 (11th Cir. 2017) (quoting Fed. R. Civ. P. 6(b)(1)). Courts should generally consider "four factors in determining whether a party has shown excusable neglect: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Id.*

The Court's consideration of these factors based on the record of the case and the arguments advanced by counsel is that limited additional discovery should be allowed into significant facts that may have changed since discovery closed in this case, that being Plaintiff's

5

worsening health condition, development of kidney disease, and the resulting damages, and other persons who have been injured by the device and instruments at issue in this case since discovery closed. But the Court will not allow discovery into other vague and unspecified design defect facts or other facts that Plaintiff should have discovered during the discovery period. Not only has Defendant agreed that discovery into Plaintiff's worsening health condition is appropriate, but this limit on additional discovery is consistent with the case law and strikes the proper balance of allowing for discovery into facts that Plaintiff could not have obtained through diligence and good faith during the discovery period and avoiding unnecessary prejudice to Defendant. It also avoids protracted litigation through a costly and lengthy discovery and is in the best interests of efficient judicial administration. *Ashmore v. Sec'y, DOT*, 503 F. App'x 683, 686 (11th Cir. 2013) (in determining the propriety of resetting a deadline after it has expired, "the Supreme Court accorded primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration.").

Thus, as explained herein, the Court will allow limited discovery, and expert reports may also be supplemented to account for the new, limited discovery.

### B. Substitution of Dr. Hall or Addition of New OB/GYN Expert

For similar reasons, the Court will not allow Plaintiff to substitute her OB/GYN expert Dr. Hall or allow the addition of another OB/GYN expert. Plaintiff was obviously confident in Dr. Hall's opinions when she appealed the district court's order striking him as unqualified; now, having learned that Dr. Hall is qualified but that there is an open question whether his opinion is reliable, Plaintiff wishes to substitute him on the basis that he no longer teaches medicine and has moved to a new location. Plaintiff's argument is unavailing.

Whenever a deadline is set, it can only be modified upon a showing of good cause, using the same standards previously described in *EarthCam, Inc.*, 703 F. App'x at 813. Although Dr. Hall no longer practices medicine in the same city, he still practices medicine and none of his work history has changed, such that he is still qualified to opine as an expert in this case. Furthermore, Defendant has filed a transcript of a deposition taken on July 26, 2021 in which Dr. Hall testified that he retired from his practice in Denver, CO after forty years and relocated to be closer to his family in Lincoln, NE, where he has been practicing medicine since February 2020. (Doc. 182-1 at 4.) But he is by no means retired. Dr. Hall testified that he works eighty (80) hours per week, including eight to ten hours every Monday on medical legal cases, and he also teaches as faculty and has "the same" teaching responsibilities he had in Colorado. *Id.* at 4, 5.[6] Thus, Dr. Hall's work between Colorado and Nebraska has not changed in any significant way, and the Court cannot find that Plaintiff will be prejudiced by proceeding with Dr. Hall as her sole OB/GYN expert or that good cause exists to allow Plaintiff to add an expert or substitute Dr. Hall. Moreover, if the substitution was allowed, Defendant would be unfairly prejudiced[7] under these circumstances and the Court's administration further delayed. Plaintiff's request to add an OB/GYN expert or substitute Dr. Hall is, therefore, **DENIED**.

---

6 Plaintiff has not challenged this transcript and, for the sole purpose of deciding how the case should proceed at this time, the Court has no reason to doubt its veracity.

7 Allowing Plaintiff to substitute Dr. Hall under the circumstances would prejudice Defendant as nothing has changed about Dr. Hall's qualifications or work, and Plaintiff now has the benefit of a district court order finding deficiencies in Dr. Hall's opinion, which this Court must still address on remand and which could potentially dispose of Plaintiff's case.


### C. Filing and Disposition of *Daubert* and Summary Judgment Motions

Finally, the Court must determine whether to allow a limited discovery period followed by refiling of motions or to first resolve the previously filed motions, including the *Daubert* motion to exclude Dr. Hall.

Generally, "a successor judge hearing a case on remand, after the original judge has stepped down, may make findings of fact and conclusions of law on the existing record or the record as supplemented, or may choose to grant a new trial, at his discretion." *In re Karten*, 293 F. App'x 734, 736 (11th Cir. 2008). While district courts must follow an instruction from the Circuit Court to conduct a hearing or gather additional evidence[8]; absent such an instruction, a district court can simply resolve the previously filed motion(s). *See, e.g.*, Order, *Communications Workers of America v. BellSouth Telecommunications, Inc.*, Case. No. 1:19-cv-03307-WMR (N.D. Ga., Month, 7, 2019), ECF No. 52 (granting a motion for summary judgment following remand using only the guidance in the Circuit Court's opinion); *Steele v. Shaw*, Case No. 92-52-CIV-ORL-18 (M.D. Fl. Nov. 7, 1996), ECF No. 117 (sua sponte appointing expert and then granting defendant's renewed motion for summary judgment). Indeed, remand is not an open-ended opportunity for a plaintiff to fix the wholes in her case or to recreate her case; it is for the district court to resolve those matters left unresolved or which were wrongly decided in the first instance. Thus, the Court's order on how this case will proceed best fits the purpose of remand.

---

[8] The Court of Appeals has made its orders "explicitly clear" when it instructs the district court to hold a hearing on remand; it is not abuse of discretion not to hold a hearing where one is not required by the Court of Appeals or the relevant rules or law. *United States v. Brown*, 441 F.3d 1330, 1373 (11th Cir. 2006).

Plaintiff argues that the Court cannot simply resolve the previously filed motions, but that the Parties should be allowed to refile dispositive and *Daubert* motions and that the Court should conduct a new *Daubert* hearing. (Doc. 177 at 5-7; Doc. 175 at 9-10.) Plaintiff emphasizes that Federal Rule of Civil Procedure 63 requires that a successor judge recall a witness "whose testimony is material and disputed and who is available to testify again. . . ." (Doc. 177 at 6.) Plaintiff further argues that the Court cannot merely read the briefs and review the transcript of the prior *Daubert* hearing because a key part of Dr. Hall's testimony involved a video that this Court does not have. (Doc. 175 at 20-21; Doc. 177 at 6.)

Defendant argues, however, that "the record is complete" and that the Court should first resolve the previously filed *Daubert* motions on *de novo* review. (Doc. 175 at 19; Doc. 176 at 2-3.) Defendant believes that Dr. Hall's testimony is due to be excluded as unreliable and that his exclusion is potentially dispositive of Plaintiff's claims in their entirety. (*See* Doc. 176 at 2-3.) Defendant further argues that the video Plaintiff alludes to can be provided to the Court, and that Rule 63 typically applies where a witness's credibility is at issue but that Dr. Hall's credibility is not at issue in this case. *Id.* at 3-4.

The Court finds Defendant's arguments persuasive. In its published opinion in this case, the Court of Appeals clearly left open the question of whether Dr. Hall's opinion is due to be excluded as unreliable and instructed that this issue be resolved by the district court. (Doc. 169 at 23-29, 37.) Plaintiff has not challenged Defendant's argument that exclusion of Dr. Hall may dispose of this case and because "Dr. Hall was Moore's only causation expert" (Doc. 169 at 18), exclusion of Dr. Hall's causation opinion would apparently dispose of Plaintiff's case. Therefore, it does seem fairest and most efficient to address the issues remaining in the previously filed motions *de novo* before allowing limited discovery and filing

9

of additional motions. Furthermore, the Court is concerned that allowing discovery and a complete refiling of all dispositive and *Daubert* motions would not only unnecessarily prolong this case, but would cause entirely new facts and arguments to be raised, such that this Court may no longer be resolving the issues that it was instructed to resolve on remand.

In addition, a new *Daubert* hearing is not automatically required. "[W]hile a hearing on a *Daubert* motion may be helpful (*e.g.*, in complicated cases involving multiple experts), neither the *Federal Rules of Evidence* nor pertinent case law require a court to hold a hearing before ruling on a *Daubert* motion." *Stiefel v. Malone*, No. 4:18-cv-01540-SGC, 2021 U.S. Dist. LEXIS 23552, at *15 (N.D. Ala. Feb. 8, 2021); *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) ("A district court should conduct a *Daubert* inquiry when the opposing party's motion for a hearing is supported by 'conflicting medical literature and expert testimony.'") (citation omitted). Further, Rule 63's requirement of a hearing when a successor judge takes over a case does appear to apply primarily when credibility determinations must be made. *See, e.g., In re Karten*, 293 Fed. Appx. 734, 736 (11th Cir. 2008) ("If a judge presiding in a civil bench trial steps down before making findings of fact and conclusions of law, a successor judge generally cannot make credibility determinations and should retry the case."); *Fuentes v. Sec. Forever LLC*, No. 16-20483-CIV, 2017 U.S. Dist. LEXIS 80456, at *17 (S.D. Fla. May 24, 2017) ("[T]here are significant credibility disputes which I cannot resolve without hearing the witnesses myself."); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 906 (9th Cir. 2001) ("[T]he successor judge may examine the trial transcript as if it were 'supporting affidavits' for summary judgment purposes and enter summary judgment if no credibility determinations are required."); *In re Feresi*, No. CV 14-4512-DOC, 2015 U.S. Dist. LEXIS 193581, at *26 (C.D. Cal. May 22, 2015) ("[T]he focus of the rule [is] on the successor judge's re-hearing witness testimony before

10

making credibility findings."). Plaintiff has cited no case where the relief she now requests has been granted, and the Court sees no reason to do so here. Thus, the Court will proceed with resolving the previously filed motions, and the Court may order production of the video used at the initial *Daubert* hearing or set a new *Daubert* hearing if it finds that it would be useful.

## CONCLUSION

Accordingly, the Court hereby **ORDERS** as follows:

1) The Court will resolve the previously filed *Daubert* and dispositive motions *de novo*, and the Court may set a *Daubert* hearing or issue additional orders as appropriate; and

2) If the case remains triable, the Court will issue a narrowly tailored discovery order for a limited time period, which will allow for supplemental expert reports to be produced and for narrowly tailored dispositive and *Daubert* motions to be filed.

**SO ORDERED**, this <u>24th</u> day of August 2021.

<u>/s/ W. Louis Sands</u>
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**