IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| TAMANCHIA MOORE, : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | CASE NO: 1:15-cv-56  (WLS) |
| : | |
| INTUITIVE SURGICAL INC., : | |
| : | |
| **Defendant.** : | |
| _____ : | |

## ORDER

Presently before the Court is the Motion to Quash Subpoena by Non-Party Veranda Medical Group, LLC (Doc. 286) ("Motion to Quash") filed February 20, 2024. Plaintiff's Response in Opposition to the Motion to Quash (Doc. 289) ("Response') has been filed and a hearing on the Motion to Quash was held on March 27, 2024. After the hearing, the matter was taken under advisement. Upon consideration of Veranda Medical Group, LLC's ("Veranda") Motion to Quash, the Plaintiff's Response, evidence presented at the hearing, and counsels' arguments, the Court finds that the Motion to Quash will be denied in part and held under advisement in part for the reasons stated below.

**I.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

On or about March 19, 2013, Plaintiff, Tamanchia Moore, underwent a robotically assisted laparoscopic hysterectomy procedure—in which the *da Vinci* Surgical System, including a monopolar curved scissor ("MCS"), was utilized in Plaintiff's surgery. Afterward, Plaintiff learned that she had suffered a thermal injury to the medial aspect of the ureter, causing her to need to undergo numerous and extensive medical procedures.

Defendant, Intuitive Surgical Inc., is a publicly traded company that designs, manufactures, and sells the *da Vinci* Surgical System, including the MCS. On March 16, 2015, Plaintiff filed this products liability action against Intuitive asserting that the MCS utilized in

1

her surgery had microcracks and that her thermal injury was caused by the unintended discharge of electrical energy.

During discovery, it was disclosed that the specific MCS used during Plaintiff's surgery ("Pertinent MCS") had been used in six subsequent surgeries performed by four surgeons, not including the surgeon who performed Plaintiff's surgery. Defendant had disclosed the name of one of the surgeons, Dr. Paul Smurda. Although Plaintiff was aware that the Pertinent MCS had been used six times after her surgery, she did not seek to obtain the details of those surgeries. Defendant provided Plaintiff with the identity of the three remaining surgeons, Dr. William Sewell, Dr. Steven Kitchen, and Dr. Thomas Talley, in November 2023. Plaintiff anticipates that during the trial, Defendant will call the four surgeons to testify that during the surgeries they performed using the Pertinent MCS, the instrument performed as expected and without any complications. Plaintiff issued subpoenas to the relevant entities or persons to obtain the medical records related to these six subsequent surgeries. Veranda is one of the entities Plaintiff subpoenaed seeking the records of Dr. Sewell regarding two surgeries he performed using the Pertinent MCS after Plaintiff's surgery.

In addition, Plaintiff seeks from Veranda medical records of patients who underwent surgeries during the time period of January 1, 2010 to May 30, 2013, in which the same model as the Pertinent MCS was used. Plaintiff contends that during this time frame, the MCS model used in Plaintiff's surgery had been recalled.

The subpoena issued by Plaintiff to Veranda ("Veranda Subpoena"), requires production of the following documents:

> 1. Please provide a copy of your *March 25, 2013* (Case No: 1857635/Surgery Time: 13:49:30) and *April 15, 2013* (Case No. 1886837/Surgery Time: 14:07:43) Operative Report(s) for the surgery utilizing the da Vinci surgical system and its MCS component (Serial No. 121204048); *performed by Dr. William Sewell.*
>
> 2. Please also produce copies of ALL office visit records for the paitent(s) [sic] involved in that surgery assessing their condition post/pre-surgery.
>
> 3. Please produce copies of ALL office visit records, including operative reports, for all patients utilizing the da Vinci surgical system and its MCS component from January 1, 2010 through May 30, 2013.

(Doc. 286-1 at 4 (emphasis added)) As noted above, this matter is ripe for resolution.

2

## II. MOTION TO QUASH AND RESPONSE

### A. Law

A subpoena under Federal Rule of Civil Procedure 45 is a discovery vehicle which can be used to obtain documents from a nonparty that are relevant to a pending lawsuit. *See* Fed. R. Civ. P. 34(c). Where a subpoena commands the production of documents, notice must be served on each party before such subpoena is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4). A subpoena which requires disclosure of privileged or protected information or which is unduly burdensome, must be quashed or modified by the issuing court on the filing of a timely motion. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

Rule 45 must, however, be read in conjunction with Federal Rule of Civil Procedure 26 because the latter rule "clearly defines the scope of discovery for all discovery devices." 9A Wright & Miller, *Federal Practice & Procedure*: § 2452 (3d ed. 2008). Pursuant to Rule 26,

> Parties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable.*

Fed. R. Civ. P. 26(b)(1) (emphasis added). "Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery." Fed. R. Civ. P. 26(b)(1) advisory committee note to 2015 amendments (discussing deletion from Rule 26(b)(1) of phrase that discovery be "reasonably calculated to lead to the discovery of admissible evidence").

45 CFR § 164.512 sets forth the requirements for disclosure of personal information protected under HIPAA in a judicial proceeding, providing:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> > (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order[.]

45 C.F.R. § 164.512(e).

3

The party seeking to quash a subpoena bears the burden of establishing that its request should be granted. *Clark v. Irvin*, No. 1:09-CV-101(WLS), 2011 WL 13152862, at *2 (M.D. Ga. Mar. 31, 2011) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

## B. Discussion

"Veranda is a healthcare facility for the entire family with numerous healthcare providers," offering "its patients a depth and range of experience in pediatrics, gynecology, family medicine, [and] endocrinology." (Doc. 286-2 at 2). Veranda asks the Court to quash the Veranda Subpoena for two reasons: First, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") prohibits Veranda from producing the documents required in Items 1, 2, and 3 of the Veranda Subpoena because such documents contain privileged and protected patient health information. Second, production of the documents required by Item 3 would impose an undue burden on Veranda.

The Plaintiff does not contest that the medical records sought in Items 1, 2, and 3 of the Veranda Subpoena constitute protected health information under HIPAA.

1. Veranda Subpoena – Items 1 and 2

Veranda's objection with respect to Items 1 and 2 relates only to its concern that producing unredacted documents subjected it to a violation of HIPAA. Therefore, Veranda's counsel attempted to settle the matter with Plaintiff's counsel by offering to produce redacted copies of documents in Items 1 and 2 which would permit Veranda to remain in compliance with HIPAA. However, Plaintiff's counsel insists on unredacted copies.

With respect to the records for the two surgeries performed on March 25, 2013 and April 15, 2013, by Dr. Sewell, Plaintiff argues that the unredacted records are necessary because Dr. Sewell is expected to testify that the Pertinent MCS device worked as expected and these two patients experienced no injuries from the Pertinent MCS. Plaintiff asserts that while Dr. Sewell may be able to testify about what went on during the surgical procedure, he may not have all the information relevant to any post-operation complications experienced by those patients. Plaintiff argues that if these patients experienced post-op complications, they may have gone to other providers or specialist because they did not realize the source of the complication. Plaintiff asserts this is the route she took because she was having abdominal and urological problems. Therefore, she went to a urologist as opposed to going back to the

4

OB/GYN who performed her surgery. Plaintiff asserts she should not have to rely on Dr. Sewell's testimony as to what happened post-op with regard to his two patients. Rather, "Plaintiff requires the names of these patients to interview them to appropriately assess what occurred post-operatively. Not only [does Dr. Sewell] possess exclusive knowledge about the nature of the surgeries, but [he] also know[s] the identity of the patients as well." (Doc. 289 at 2)

In considering Plaintiff's request for the medical records of Dr. Sewell's two patients, the Court finds that the documents requested are directly related to the use of the same surgical device that is the subject of this litigation. Defendant is expected to seek[1] to present Dr. Sewell's testimony that the Pertinent MCS performed without causing injuries in the subsequent surgeries he performed. Thereby inferring that the device must have also performed correctly during Plaintiff's surgery and therefore, could not have caused Plaintiff's injury. Defendant has no incentive to look into the post-operative period during which Plaintiff's complications arose. The Court respects the privacy of Dr. Sewell's patients. However, to the extent Defendant seeks to have Dr. Sewell testify that these two patients experienced no injuries during the surgical procedure or their recovery period while in Dr. Sewell's care, the Plaintiff's request is within the scope of discovery provided in Rule 26. Veranda indicated in the Motion to Quash and at the hearing that it could remain in compliance with HIPAA and produce the records requested in Items 1 and 2 pursuant to a Court order. Based on the facts before the Court, Veranda's Motion to Quash with respect to Items 1 and 2 is **DENIED IN PART** and **GRANTED IN PART** as the Court will impose restrictions on the use and distribution of the documents produced by Veranda pursuant to Items 1 sand 2 as set forth below.

2. <u>Veranda Subpoena – Item 3</u>

In response to Veranda's argument that Item 3 of the Veranda Subpoena is unduly burdensome, Plaintiff argues that Item 3 was narrowly tailored to require production of

---

[1] The Parties are reminded that the Court has not ruled on the Plaintiff's Motion in Limine No. 13. Therefore, the admissibility of the testimony of Dr. Sewell, Dr. Kitchen, and Dr. Talley, as well as Dr. Smurda's testimony as a fact witness, has not been determined.

5

medical records for a limited period of time (January 1, 2010 through May 30, 2013) pertaining to only the surgeries in which the MCS model used was the same model as the Pertinent MCS.

At the March 27, 2024 hearing, Veranda explained in detail the process it would have to undertake to produce the documents required by Item 3. Veranda argues that the production would be unduly burdensome because the majority of the work to locate the documents would need to be done by hand. Veranda employs only one medical records technician. Veranda would be required to either hire outside personnel with enough knowledge to know what to look for in the medical records, or it would be required to reassign its personnel from other duties to assist in the document review and location of the relevant medical record with the correct MCS model. Personnel would then need to be available to carefully review and redact personal information from any medical records that were to be produced. Veranda asserts that complying with Item 3 of the Veranda Subpoena will have a significant financial impact on Veranda, as well as interrupt its day-to-day ability to serve its patients, particularly if it does not hire outside personnel.

Ms. Sharon Lott, Veranda's administrator, testified at the hearing and estimated that an MCS device was probably used by its doctors about 200 times during the 2010 to 2013 time period. Approximately 50 percent of these files would have to be pulled from offsite storage, those paper files would need to be physically reviewed to determine whether a *da Vinci* system device was used and whether the correct model of the MCS device was used. Ms. Lott estimated that Veranda would need at least a month to produce the documents requested in Item 3.

Plaintiff's counsel stated that Defendant's counsel may have a list of the records for surgeries in which an MCS of the same model as the Pertinent MCS was used during the January 10, 2010 to May 30, 2013 period. Veranda's counsel agreed that such a list would assist in reducing the burden of producing the requested medical records, but that there would still be a significant burden on Veranda to locate and redact the documents. In addition, Veranda's counsel was concerned that Plaintiff proposed to use the unredacted information in the records to contact the individual patients to inquire about their surgeries. Veranda's counsel argued that providing unredacted copies of the medical records and permitting Plaintiff's counsel to contact those patients could cause her client significant reputational harm.

6

The Parties suggested that they may be able to present a consent order. As such, Item 3 of the Veranda Subpoena will remain under consideration. The Court will enter a separate order with respect to Item 3.

### III. CONCLUSION

Accordingly, the Court hereby **ORDERS** that:

1. The Motion to Quash (Doc. 286) is **DENIED** to the extent that Veranda is **ORDERED** to produce unredacted versions of the documents requested in Items 1 and 2 of the Veranda Subpoena. Such documents shall be produced within seven (7) days of entry of this Order.

2. The Motion to Quash is **GRANTED** to the extent that the Court imposes the following restrictions on the use and distribution of the documents produced by Veranda pursuant to Items 1 sand 2:

> (A) The Plaintiff and her counsel are prohibited from using or disclosing the protected health information included in any documents produced pursuant to Item 1 and/or 2 of the Veranda Subpoena for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) The Plaintiff and her counsel must return to Veranda, or certify that they have destroyed, any protected health information produced pursuant to Item 1 and/or 2 of the Veranda Subpoena, (including all copies made) at the end of the litigation or proceeding.

3. **Notwithstanding the ordered production, due to the significant patient privacy interests, counsel may not contact, directly or indirectly, any such patients without prior notice to and authorization obtained from this Court**.

4. The Court takes Item 3 of the Veranda Subpoena under submission for further review and consideration of the consent order, if any, that the Parties may propose. Any such consent order shall be filed on or before Thursday, April 4, 2024.

5. In addition, on or before Thursday, April 4, 2024, Plaintiff's counsel shall confer with Defendant's counsel regarding any assistance Defendant may be able to provide to Veranda to identify files that may be included in the medical records sought by Item 3 of the Veranda Subpoena.

6. In the event a consent order is not provided by April 4, 2024, with respect to Item 3, then on or before Friday, April 5, 2024, Plaintiff's counsel shall file a status report notifying the Court whether a list of records in Paragraph 5 above is available. Such status report is to include, without identifying any personal information, the number of files which are included in Item 3 of the Veranda Subpoena.

Nothing in this Order affects any decision of the Court as to the admissibility of the testimony of Dr. Sewell, Dr. Kitchen, Dr. Talley, or Dr. Smurda as to the surgeries they performed using the Pertinent MCS. Nor does this Order affect any decision of the Court as to the admissibility of any evidence produced pursuant to Item 3 of the Veranda Subpoena.

**SO ORDERED**, this 29th day of March 2024.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**